### Marcus H. Topping *et al.*

#### *v.*

### Gaius Paddock.

1. Partnership—*right of partner to charge for interest on money borrowed.* Where a partnership is formed by three, two of whom are to furnish the capital, which they do furnish, the other to furnish no part thereof, in the absence of any agreement to that effect, either express or to be implied from the conduct of the parties, those furnishing the capital will not have the right to charge the firm with interest paid by them on moneys borrowed by them in their own names with which to carry on the business of the firm.

2. Same—*whether money due partner is part of the capital.* Where a former clerk is taken into co-partnership by a firm which was indebted to him, and the amount of such indebtedness is placed to his credit upon the new books, to which, on dissolution of the firm, is added his share of the net profits, such indebtedness will not be regarded as capital put in by such new member, but rather as a loan to the firm to be repaid him with his share of the profits.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Mr. Levi Davis, and Mr. David Gillespie, for the appellants.

Mr. H. S. Baker, and Mr. Chas. P. Wise, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Gaius Paddock against Marcus H. and John S. Topping, for an account and settlement of the partnership affairs of the late firm of Topping Bros. & Co., a firm composed of complainant in the bill and the two defendants. The firm was formed on the 1st day of January, 1864, and continued in business until the 1st day of January, 1871. No written articles of co-partnership were entered into by the parties; the terms and conditions of the contract under which the business was transacted rested entirely in parol. At the time, however, the partnership was dissolved, a written contract was executed which shows, substantially, the terms and conditions under which the business of the firm was carried on. In the main the parties agree in regard to the contract and settlement of the accounts.

As we understand the record, there is but one point in dispute, and that is, whether the complainant, under the contract under which the business was transacted, should be charged with interest on money borrowed during the existence of the firm, for carrying on the business of the firm. Upon this point there is a radical disagreement between the parties in their evidence as to the contract.

It appears that complainant, prior to the formation of the partnership, had been for several years in the employ of Topping Bros. as clerk and book-keeper, and that they were indebted to him in the sum of $1126.36, which indebtedness, when the new firm was formed, was carried into the books of the new firm of Topping Bros. & Co., and placed to the credit of complainant.

It further appears, that, at the time of the formation of the co-partnership, the estimated value of the stock on hand belonging to the defendants and brought into the new firm was $54,000. The stock on hand at the time of the dissolution of the firm was $96,466, which was retained by the defendants.

It also appears, that, during the existence of the co-partner-

ship, complainant was to receive for the first five years one-fifth of the net profits of the business, and for the last two years one-fourth of the same. The net profits of the business accruing to complainant, as estimated by him during the co-partnership, amount, in the aggregate, to the sum of $35,776.38, while the defendants estimate the same at the sum of $31,121.64; the difference arising from the fact that defendants deduct from the profits interest paid on money borrowed by them and put into the firm, while complainant contends the money so borrowed was capital which defendants were bound to furnish, and the interest on the money so borrowed should not be deducted from the profits in estimating the amount he was entitled to receive, except a claim due from the firm to the estate of E. D. Topping, upon which he had agreed, on the dissolution of the firm, that the interest accruing thereon might be deducted from the profits of the firm.

We have carefully examined all the evidence contained in the record, and the arguments of counsel; and while there is a clear conflict between the testimony of complainant, and the defendants in regard to the fact whether complainant should be charged with interest on money borrowed or advanced for the benefit of the firm, in excess of such interest as was received by the firm, and while the question is one not entirely free from doubt, yet, from all the facts and circumstances connected with the case, we are satisfied the theory of the complainant is the correct one, and the decree of the circuit court is sustained by the evidence. The record fails to show that complainant, under the contract under which the firm was formed, was bound to furnish any portion of the capital with which the business of the firm was to be transacted.

It is true, on the formation of the firm, the defendants were indebted to the complainant for his services as a clerk, in the sum of $1126.36, which was carried into the books of the new firm and placed to his credit, but not, however, as capital advanced by him. The capital of the new firm with which the business was commenced was a stock of goods furnished by

the defendants at an estimated value of $54,000. °This is shown by the books of the company to be the capital and only capital with which the business was commenced. In addition to this, the books containing complainant's account with the firm, made up for the purpose of showing amount due him from the defendants, commence by charging this $1126.36 to the defendants in the following words: "By balance due him by Topping Bros. $1126.36," to which is added complainant's share of net profits, in order to determine amount due him on dissolution of the firm. This entry shows clearly that the item due complainant when the firm was formed was not regarded as capital. The books would seem to indicate that the amount was regarded rather as a loan, which complainant was entitled to receive back with the amount of profits coming to him.

The theory that complainant was to furnish any part of the capital is inconsistent with the conduct of the parties. If complainant was to furnish any portion of the capital, it is strange that no amount was agreed upon, and it is not perceived why, as the defendants were compelled to borrow money during the existence of the firm to carry on the business, complainant was never called upon for a single dollar of capital; nor was he required to join in the execution of a note for money thus obtained; nor was the firm name given in payment for money obtained by the defendants. These and other kindred facts are so utterly inconsistent with the theory that complainant was bound to or did furnish any portion of the capital of the firm, that we can not believe such was the understanding of the parties.

If, then, the complainant was not, under the agreement, required to furnish any portion of the capital with which the business of the firm was transacted, in the absence of a contract that he should be liable for interest on money loaned we fail to perceive any principle upon which he could be charged with interest. If the defendants agreed to furnish the capital it was not a matter that concerned the complainant whether that capital was borrowed by the defendants or whether they pro-

cured it in some other manner  But, independent of these considerations, the contract signed by the parties at the time the firm was dissolved would seem to indicate that complainant was not chargeable with interest. The contract, after providing that complainant is to receive one-fifth of the net profits of the business of the firm from the first day of January, 1864, and one-fourth of the net profits from the first day of January, 1869, to the first day of January, 1871, then provides, "he (complainant) standing his share of the losses in due proportion to his profits on all debts accruing to the said firm, or by reason of all legitimate business transactions of the firm accruing during the above mentioned term of seven years, and no interest to be charged him on any portion of the capital belonging to either of the said firm during his full term of copartnership. It is agreed by all the parties above mentioned that the balance standing to the credit of the estate of E. D. Topping upon the 31st day of December of each respective year, as shown by the books of the said firm, shall be entitled to interest at the rate of ten per cent." If the interest paid by the defendants on money borrowed by them was to be deducted from the profits before complainant was to share in such profits, it is strange, indeed, that the contract of dissolution should declare that no interest was to be charged the complainant on any portion of the capital belonging to either of the firm; and it is more difficult to understand why the contract should declare, in express terms, that complainant should bear his proportion of the interest due the estate of E. D. Topping, and remain entirely silent as to other obligations incurred by the defendants, if it was the understanding that complainant should bear his proportion of all interest agreed to be paid to different parties during the existence of the firm. We do not regard the position as logical or sound, and we can not adopt it. If it had been the contract that all interest paid was to be deducted before appellee could share in the profits, we are satisfied a provision of that character would have been inserted in the contract when the parties did provide, in ex-

press terms, that one debt the defendants were owing should be so considered.

We are satisfied the decree of the circuit court is correct, and it will be affirmed.

*Decree affirmed.*